IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRITTANY ETKINS,

      Plaintiff,

      v.

DIVE NORTH HILLS, LLC,

      Defendant.

2:24-CV-01474-CCW

## OPINION

Plaintiff, Brittany Etkins, claims that her former employer, Defendant Dive North Hills, LLC, discriminated against her on the basis of her pregnancy and retaliated against her for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). Ms. Etkins further claims that Dive North Hills failed to make reasonable accommodations for her pregnancy and both discriminated and retaliated against her for requesting such accommodations in violation of the Pregnant Workers Fairness Act ("PWFA"). Dive North Hills moves for summary judgment on all claims. ECF No. 39. The Court will grant the Motion with respect to Ms. Etkins' retaliation claims under Title VII and the PHRA and with respect to Ms. Etkins' PWFA claims. The Court will deny the Motion with respect to Ms. Etkins' discrimination claims under Title VII and the PHRA.

### I.   Material Facts

The following facts are drawn from the parties' concise statements of material fact ("CSOMF"), ECF Nos. 46 and 49, and are undisputed unless otherwise noted.[1]

---

[1] ECF No. 46 contains Ms. Etkins' responses to Dive North Hills' CSOMF followed by Ms. Etkins' CSOMF. ECF No. 49 contains Dive North Hills' responses to Ms. Etkins CSOMF.

Dive North Hills is one of six "Dive Bar & Grille" locations owned and operated by Clint Kuskie, Gordon Judge, and Thomas Michael. ECF No. 46 ¶¶ 1–2. Ms. Etkins began working at the Lawrenceville Dive Bar & Grille in May 2021. *Id.* ¶ 7. Ms. Etkins was soon promoted to general manager of the Lawrenceville Dive Bar & Grille. *Id.* ¶ 8. In November 2022, Dive Bar & Grille opened a new location in Pittsburgh's North Hills ("Dive North Hills"). *Id.* ¶ 22. Shortly thereafter, Ms. Etkins stopped working at the Lawrenceville Dive Bar & Grille and started working at Dive North Hills. *Id.* ¶ 23. Following her transfer, Ms. Etkins worked closely with the general manager of Dive North Hills, Derek Bell. *Id.* ¶ 24. The parties dispute whether Ms. Etkins performed well at either the Lawrenceville Dive Bar & Grille or Dive North Hills. *See id.* ¶¶ 12–21, 25–28. But the parties agree that, almost immediately after starting at Dive North Hills, Ms. Etkins and Mr. Bell became friends, often spending time together outside of work. *Id.* ¶ 29.

Ms. Etkins learned that she was pregnant on November 3, 2023. ECF No. 49 ¶ 96. The same day, she informed Mr. Bell of her pregnancy. *Id.* At his deposition, Mr. Bell described the father of Ms. Etkins' child, who is a former employee of Dive North Hills, as "one of the worst people [he] ha[s] ever met in [his] life." ECF No. 46 ¶ 36.

According to Ms. Etkins, her relationship with Mr. Bell rapidly deteriorated after she disclosed her pregnancy. ECF No. 49 ¶ 97. Ms. Etkins alleges that, after she disclosed her pregnancy, Mr. Bell began harassing her about her schedule, stopped communicating with her about scheduling and other work-related issues, left her more difficult tasks to complete at work, and told Ms. Etkins never to speak about her pregnancy at work. *Id.* ¶¶ 97–103. And, while Dive North Hills denies these specific allegations, *see id.*, it acknowledges that Mr. Bell ended his personal friendship with Ms. Etkins after she disclosed her pregnancy. ECF 40 at 2.

In December 2023, roughly one month after disclosing her pregnancy, Ms. Etkins accessed Mr. Bell's computer while it was in an unlocked office accessible to Ms. Etkins and read an email in Mr. Bell's inbox about a new manager bonus program at Dive North Hills.  ECF No. 49 ¶¶ 104–105.[2]  Ms. Etkins informed two co-workers about the email she read.  ECF No. 46 ¶¶ 70–71.

Then, on January 6, 2024, Mr. Bell heard a rumor that Ms. Etkins used a fake email account to submit a negative review about Mr. Bell.  ECF No. 49 ¶ 111.  Mr. Bell informed Mr. Kuskie about the rumor and told Mr. Kuskie that, if the rumor was true, "I want [Ms. Etkins] gone immediately." *Id.* ¶ 112.  Mr. Kuskie checked recent Google reviews for the restaurant, observed nothing suspicious, and told Mr. Bell as much.  *Id*.  But, despite the absence of a suspicious review, the owners of Dive North Hills decided to terminate Ms. Etkins.  ECF No. 46 ¶ 74.[3]  On January 6, 2024, Mr. Kuskie texted Messrs. Judge and Michael and asked if they were "down to cut ties with [Ms. Etkins] before Thursday?  I was hoping she would initiate the process but doesn't look like it."  *Id.*;  ECF No. 43-1 at 8.  Messrs. Judge and Michael responded to Mr. Kuskie's text message, agreeing with the recommendation to terminate Ms. Etkins.  ECF No. 43-1 at 8.[4]

---

[2] Ms. Etkins contends that she "inadvertently came upon and read the email" when she went to use the computer for work purposes.  ECF No. 49 ¶ 105.  Ms. Etkins also contends that it was "commonplace" for employees to access Mr. Bell's computer in the Dive North Hills office and that Mr. Bell authorized employees to look at his emails on multiple occasions.  ECF No. 44 at 8.  Ms. Etkins also notes that she was never formally reprimanded for reading the email, and that the email incident was not cited to her when she was later terminated on January 10, 2025.  *Id*. at 8–9.  Dive North Hills acknowledges that Ms. Etkins "may have had access to the computer in the office," but contends that "she certainly did not have unfettered authorization to view Mr. Bell's personal emails[.]"  ECF No. 47 at 4.  While Dive North Hills maintains that it terminated Ms. Etkins because of the email incident, it does not appear to dispute that it never formally reprimanded Ms. Etkins for the email incident.  Dive North Hills also appears to concede that it did not cite the email incident to Ms. Etkins when it terminated her employment in January 2024.

[3] The parties agree that Mr. Bell informed Mr. Kuskie about Ms. Etkins' pregnancy two or three weeks after Ms. Etkins informed him that she was pregnant.  ECF No. 46 ¶ 39.

[4] According to Dive North Hills, Messrs. Kuskie, Judge, and Michael decided to terminate Ms. Etkins because of her unauthorized access of Mr. Bell's email, not because of the rumor regarding the fake review.  ECF No. 49 ¶ 113 (citing to ECF No. 48-4 (declaration of Mr. Kluskie averring that he and Messrs. Michael and Judge "terminated [Ms.] Etkins because in addition to her historical and ongoing performance issues, we learned that she accessed [Mr.] Bell's personal emails without authorization and viewed a confidential email related to Dive North Hills' bonus structure.")).

Two days later, on January 8, 2024, Ms. Etkins texted Mr. Kuskie and requested a meeting, but did not state her intention for the meeting. *Id*. at 17.[5] Mr. Kuskie arranged a meeting for January 10, 2024. ECF No. 49 ¶ 115. Along with Ms. Etkins and Mr. Kuskie, Mr. Judge was also present at the meeting. *Id.* ¶ 116. When the meeting began, Ms. Etkins stated that she was pregnant. *Id.* Mr. Kuskie then informed Ms. Etkins that she was being terminated, with the option to continue working for Dive North Hills for an additional two weeks. *Id*.

Ms. Etkins filed the instant lawsuit on October 24, 2024, followed by a first amended complaint and then the operative Second Amended Complaint (the "SAC"). ECF Nos. 1, 8, 24. In the SAC, Ms. Etkins asserts claims against Dive North Hills for:  sex and pregnancy discrimination under Title VII and the PHRA;  unlawful retaliation under Title VII and the PHRA; and failure to accommodate pregnancy-related limitations, discrimination, and retaliation under the Pregnant Workers Fairness Act (the "PWFA"). ECF No. 24 at 5–12.[6] Dive North Hills now moves for summary judgment on all Ms. Etkins' claims. ECF No. 39.

## II.    Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'"

---

[5] Ms. Etkins asserts that she requested this meeting to ask for pregnancy-related accommodations and report Mr. Bell's allegedly discriminatory treatment. ECF No. 44 at 4. But she acknowledges she did not state an intention for the meeting. ECF No. 46 ¶ 77.

[6] This Court has jurisdiction over Ms. Etkins Title VII and PWFA claims, which raise a federal question, under 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Ms. Etkins' PHRA claims pursuant to 28 U.S.C. § 1367.

*Id.* (quoting *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor[,]" *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence. . . ." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).  Instead, "there must be evidence on which the jury could

reasonably find for the non-movant." *Id*. (cleaned up).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23;  *Jakimas v. Hoffmann La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III.    Discussion

#### A.    Legal Framework

The parties agree that the familiar *McDonnell Douglas* burden-shifting framework applies to Ms. Etkins' Title VII claims.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Burton*, 707 F.3d at 425–27;  ECF Nos. 40, 44, 47.

The *McDonnell Douglas* analysis has three steps.  First, the plaintiff must point to evidence sufficient to satisfy the elements of a prima facie case of employment discrimination or retaliation, thereby creating an inference that the employer acted unlawfully.  *See Burton*, 707 F.3d at 426. Next, the defendant must rebut this inference by articulating a legitimate, non-discriminatory reason for its actions.  *See id.*  The burden of production then shifts back to the plaintiff, who, in order to survive summary judgment, must provide evidence from which a jury could reasonably infer that the defendant's proffered explanation for its conduct is, in reality, pretext for unlawful discrimination or retaliation.  *See id.* at 426–27;  *see also Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994) (setting forth burden shifting framework under *McDonnell Douglas* at summary judgment).  Although the *McDonnell Douglas* framework contemplates a shifting burden of *production*, the burden of *persuasion* always remains with the plaintiff.  *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Title VII prohibits discrimination by employers "because of [an individual's] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the Pregnancy Discrimination Act ("PDA"),

> [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k). Additionally, the Supreme Court has held that, under Title VII, discrimination on the basis of sex encompasses pregnancy-based discrimination and that an employer engages in sex-based discrimination when it treats pregnant employees less favorably than non-pregnant employees "similar in their ability or inability to work." *See Young v. UPS,* 575 U.S. 206, 212 (2015). Hence, claims for pregnancy-based discrimination and retaliation are "analyzed under the usual Title VII discrimination framework." *King v. City of New Kensington*, No. 06-CIV-1015, 2008 WL 4492503, at *9 (W.D. Pa. Sept. 30, 2008) (Conti, J). Additionally, because the Third Circuit has found that "[c]laims under the PHRA are interpreted coextensively with Title VII claims[,]" the Court will address Ms. Etkins' Title VII and PHRA claims in tandem. *Atkins v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

Finally, while there is limited case law interpreting the Pregnant Workers Fairness Act ("PWFA"), which took effect on June 27, 2023, the Court will also apply the *McDonnell Douglas* framework to Ms. Etkins' PWFA claims. *See U.S. Equal Emp. Opportunity Comm'n v. Sec. Assurance Mgmt., Inc.,* No. 25-CV-00181, 2025 WL 2911781, at *4 n.4 (D.D.C. Oct. 14, 2025) ("Where the language of the PWFA mirrors that of the ADA or Title VII, the Court applies the legal standards governing ADA and Title VII claims to Plaintiff's corresponding PWFA claims,

as the PWFA, ADA, and Title VII all share the same purpose: eliminating workplace discrimination."); *Trego v. Penske Logistics, LLC*, No. 3:24-CV-00460, 2026 WL 402501, at *6 (M.D. Tenn. Feb. 12, 2026) ( "The few courts considering failure-to-accommodate claims under the PWFA have largely treated them like analogous claims under the ADA." (Internal citation omitted)); *see also Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) ("It is now axiomatic that" the *McDonnell Douglas* framework used "for resolution of suits brought under Title VII, also guides an analysis of claims brought under the ADA.").

The Court will first consider Ms. Etkins' discrimination claims under Title VII (Count I) and the PHRA (Count VI), followed by Ms. Etkins' retaliation claims under Title VII (Count II) and the PHRA (Count VII). The Court will then turn to Ms. Etkins' claims under the PWFA (Counts III, IV, V).

> **B.** **Ms. Etkins Makes a Prima Facie Showing of Discrimination under Title VII and the PHRA, and a Jury Must Decide Whether Dive North Hill's Proffered Justification Was Pretextual**

To make out a prima facie claim of pregnancy discrimination, "a plaintiff must establish that: (1) plaintiff is or was pregnant and the employer had knowledge of plaintiff's pregnancy; (2) plaintiff was qualified for the position at issue; (3) plaintiff suffered an adverse employment action; and (4) there was a nexus between plaintiff's pregnancy and the adverse employment action or the employer treated similarly situated non-pregnant employees more favorably than the plaintiff." *Shaffer v. Cranberry Twp.*, No. 2:19-CV-01481, 2021 WL 4710919, at *6 (W.D. Pa. Oct. 8, 2021) (Wiegand, J.) (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365–66 (3d Cir. 2008)).

Dive North Hills concedes that Ms. Etkins was pregnant;  that Messrs. Bell and Kuskie knew of Ms. Etkins' pregnancy when she was terminated[7];  and that Ms. Etkins' termination was an adverse employment action.  ECF No. 40 at 7–8.  But Dive North Hills argues the record lacks evidence of a causal nexus between Ms. Etkins' pregnancy and her termination.  *Id*.  Dive North Hill further argues that, even if Ms. Etkins could establish a prima facie case of pregnancy discrimination, she cannot show that Dive North Hill's proffered reason for terminating her—her unauthorized reading of the bonus email—was pretext for discrimination.  *Id*.

In response, Ms. Etkins argues that evidence in the record shows a "clear nexus" between her pregnancy and termination.  EC No. 44 at 6.  Ms. Etkins points to evidence that Mr. Bell became hostile towards her after she disclosed her pregnancy and subsequently encouraged Mr. Kuskie to terminate her.  *Id.* at 7.  Ms. Etkins also points to inconsistencies in Dive North Hills' proffered justification for terminating her, and argues that a jury must decide whether such justification was pretext for discrimination.  *Id.* at 8.

The Court concludes that a reasonable juror could find a causal nexus between Ms. Etkins' pregnancy and her termination.  Dive North Hills argues that "the temporal proximity" between the disclosure of Ms. Etkins' pregnancy in November 2023 and her subsequent termination on January 10, 2024 "is insufficient alone to establish causation."  ECF No. 40 at 8.  While that may be true, *see Thompson v. Liberty Mut. Ins.*, No. 18-CV-6092, 2021 WL 1712277, at *5 (D.N.J. Apr. 29, 2021) (two-and-a-half-month gap between pregnancy disclosure and termination insufficient to establish causation), Ms. Etkins does not rely on temporal proximity to establish a causal nexus.  Instead, Ms. Etkins points to evidence that, after she disclosed her pregnancy to Mr.

---

[7] Dive North Hills contends that "Ms. Etkins informed . . . Mr. Judge that she pregnant for the first time at the January 10, 2024 meeting."  ECF No. 46 ¶ 80.  Ms. Etkins, however, points out that Mr. Judge acknowledged during his deposition that he knew Ms. Etkins was pregnant before the January 10, 2024 meeting.  *Id.*  The parties do not discuss if or when Mr. Michael, who was not present at the January 10, 2024 meeting, learned that Ms. Etkins was pregnant.

9

Bell, Mr. Bell became antagonistic towards her and pushed the owners of Dive North Hills to terminate her.  ECF No. 44 at 6–7.

Dive North Hills admits that Ms. Etkins informed Mr. Bell of her pregnancy on November 3, 2023.  ECF No. 46 ¶ 37.  And there is ample evidence that would allow a reasonable juror to find that the relationship between Mr. Bell and Ms. Etkins deteriorated soon after she disclosed her pregnancy.[8]  Furthermore, Dive North Hills admits that, the day the owners decided to terminate Ms. Etkins, Mr. Bell told Mr. Kuskie that he "want[d] [Ms. Etkins] gone[,]" and Mr. Kuskie told Messrs. Judge and Michael that he "was hoping [Ms. Etkins] would initiate the process but doesn't look like it."  ECF No. 49  ¶¶ 110, 112.  A reasonable juror could therefore find that Mr. Bell became hostile towards Ms. Etkins because of her pregnancy and then advocated to push her out of Dive North Hills.  *See Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529, 543 (D. Del. 2012), *aff'd*, 511 F. App'x 125 (3d Cir. 2013) (an employer is liable for race discrimination when a non-biased decision-maker is influenced by a biased managerial employee.)

While Dive North Hills offers a non-discriminatory reason for its decision to terminate Ms. Etkins—her unauthorized access of Mr. Bell's emails in December 2023—a jury must decide whether that justification was pretext for discrimination.  Ms. Etkins contends that  it was normal for  employees at Dive North Hills to use Mr. Bell's computer and that Mr. Bell previously authorized employees to access and even send emails from his email account.  ECF No. 46 ¶ 68.  Ms. Etkins also points to contemporaneous evidence suggesting that Dive North Hills terminated her because of rumors that she posted negative reviews about Mr. Bell, not because of the email

---

[8] Dive North Hills essentially acknowledges as much, stating in its brief that Mr. Bell "distanced himself from [Ms. Etkins] outside the workplace" after Ms. Etkins disclosed her pregnancy, because of Mr. Bell's dislike of the father of Ms. Etkins' then-unborn child.  ECF No. 40 at 17.  Dive North Hills also acknowledges two text messages Ms. Etkins sent shortly after she disclosed her pregnancy to Mr. Bell in which Ms. Etkins tells friends that she cannot discuss her pregnancy with Mr. Bell "unless it was about [her] job."  ECF Nos. 40 at 9, 49 ¶ 102.

incident.  ECF No. 46 ¶ 113.  Finally, Ms. Etkins notes that Dive North Hills never reprimanded her for the December 2023 email incident and did not cite that incident when it terminated her in January 2024.  *Id.* ¶ 116, ECF No. 44 at 8–9.

A reasonable juror could therefore find that Dive North Hills' proffered justification for terminating Ms. Etkins was pretext for determination.  Accordingly, the Court must deny Dive North Hills' Motion with respect to Ms. Etkins' pregnancy discrimination claims (Counts I, VI). *See Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) ("Where the plaintiff does offer evidence that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail.").

**C.     North Dive Hills Is Entitled to Summary Judgment on Ms. Etkins' Retaliation Claims under Title VII and the PHRA, Because Ms. Etkins Fails to Show That She Engaged In a Protected Activity**

To establish a prima facie case of retaliation under Title VII or the PHRA, a plaintiff must show that (a) she engaged in a protected activity, (b) the employer took an adverse action against her, and (c) there was a causal connection between the protected activity and the employer's action. *Young v. City of Phila. Police Dept.*, 651 F. App'x 90, 95 (3d Cir. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006)).  Dive North Hills argues that Ms. Etkins' retaliation claims brought under Title VII and the PHRA fail because she does not allege that she engaged in a protected activity under either statute.  ECF No. 40 at 13–14.  Ms. Etkins contends that she "inten[ded]" to request pregnancy-related accommodations at the January 10, 2024 meeting, but was "instead . . . promptly terminated[.]"  ECF No. 44 at 11.  Ms. Etkins asserts that requesting pregnancy-related accommodations constitutes a protected activity under Title VII and the PHRA. *Id.*

The Court finds that the record lacks evidence that Ms. Etkins engaged in a protected activity. Even assuming, arguendo that requesting pregnancy-related accommodations constitutes a protected activity under Title VII and the PHRA,[9] the record lacks sufficient evidence that Ms. Etkins requested such accommodations. Ms. Etkins contends that she intended to request accommodations related to her pregnancy at the January 10, 2024 meeting, but "was never given the opportunity" to do so. ECF No. 46 ¶ 67. But merely intending to engage in a protected activity is insufficient for a prima facie retaliation claim. *See Hill v. Panetta*, No. 1:12-CV-350, 2012 WL 12871178, at *17 (E.D. Va. Oct. 4, 2012), *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014) ("Common sense provides that one cannot retaliate against an employee for engaging in a protected activity until the employee actually engages in the protected activity."); *see also Bedford v. Se. Pennsylvania Transp. Auth.*, 867 F. Supp. 288, 293 (E.D. Pa. 1994) ("If the person who decided that plaintiff's employment should be terminated had no knowledge that she had engaged in the protected activity in question, then clearly he could not have retaliated against her for so doing."). Accordingly, Ms. Etkins' intent to request pregnancy-related accommodations at the January 10, 2024 meeting does not constitute protected activity under Title VII or the PHRA.

Ms. Etkins also claims that she requested pregnancy accommodations before the January 10, 2024 meeting. But the sole piece of evidence Ms. Etkins relies on to support that contention

---

[9] Requesting pregnancy accommodations is a protected activity under the ADA. *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 190 (3d Cir. 2003). However, district courts within this Circuit have held that requesting pregnancy accommodations is not a protected activity under Title VII. *See Leite v. Sch. Dist. of Philadelphia*, No. 22-CV-306, 2023 WL 12242345, at *1 n.1 (E.D. Pa. Feb. 27, 2023) (rejecting the plaintiff's argument that "she engaged in Title VII protected activity 'when she requested a reasonable accommodation due to her pregnancy'" because "[r]equesting an accommodation alone is not protected activity under Title VII[.]"); *see also McCormick v. Allegheny Valley Sch.*, 2008 WL 355617, at *17 (E.D.Pa.2008) ("A simple request for maternity leave . . . cannot constitute a statutorily protected activity for purposes of a Title VII retaliation claim."). *But see Van Denburgh v. New York*, No. 1:24-CV-00989, 2025 WL 2483415, at *20 (N.D.N.Y. Aug. 28, 2025) ("Under Title VII, protected activity can include requests for reasonable accommodations, such as pregnancy-related accommodations."); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 331–32 (S.D.N.Y. 2020) (same).

is testimony from her deposition she had "plenty of conversations" with Mr. Bell "about not doing the things that I had done prior to being pregnant.  For instance, lifting the kegs, moving the pool table, we had had conversations about that."  ECF No. 48-1 at 185:19–24.  And, when defense counsel asked Ms. Etkins whether she told Mr. Bell that she needed these accommodations because of her pregnancy, Ms. Etkins replied that, "[i]n my mind, I was not allowed to talk about being pregnant with [Mr. Bell].  So if I were asking for something to not be done, which I had done, I couldn't necessarily say because I was pregnant[.]"  *Id.* at 186:12–21.  The Court concludes this testimony is, by itself, insufficient to support a reasonable finding that Ms. Etkins requested pregnancy-related accommodations before her termination.  *See Brauner v. Medscope Am. Corp.*, No. 24-CV-6512, 2026 WL 592380, at *12 (E.D. Pa. Mar. 2, 2026) ("[I]n order to defeat a properly supported motion for summary judgment, a plaintiff cannot simply rely on vague, self-serving statements which are unsupported by specific facts in the record."  (quoting *Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 574–75 (D.N.J. 2003)).  The Court will therefore grant Dive North Hills' Motion with respect to Ms. Etkins retaliation claims under Title VII (Count II) and the PHRA (Count VII).

> **D.    North Dive Hills Is Entitled to Summary Judgment on Ms. Etkins' Claims Under the Pregnant Worker Fairness Act, Because Ms. Etkins Fails to Show That She Requested Reasonable Accommodations**

Ms. Etkins asserts claims under the Pregnant Worker Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, for Dive North Hills' alleged failure to grant her reasonable pregnancy-related accommodations, and subsequent discrimination and retaliation against her for requesting such accommodations.  The PWFA, which took effect on June 27, 2023, "requires employers to grant reasonable accommodations to pregnant employees and prohibits discrimination against employees which require such accommodation."  *Beddingfield v. United Parcel Serv., Inc.*, No.

13

23-CV-05896-EMC, 2024 WL 1521238, at *8 (N.D. Cal. Apr. 8, 2024) (citing 42 U.S.C. § 2000gg–1); *Trego v. Penske Logistics, LLC*, No. 3:24-CV-00460, 2026 WL 402501, at *6 (M.D. Tenn. Feb. 12, 2026). Because of its recent enactment, "caselaw interpreting [the PWFA], especially at the summary judgment stage, is scant." *Trego*, 2026 WL 402501, at *6. However, "[t]he few courts considering failure-to-accommodate claims under the PWFA have largely treated them like analogous claims under the ADA." *Id.*

The PWFA prohibits employers from: (1) failing to make reasonable accommodations for an employee's "known limitations" related to the employee's pregnancy; (2) from "denying employment opportunities" to an employee "based on the need . . . to make reasonable accommodations to the known limitations" related to the employee's pregnancy; or (3) from retaliating against employees for "requesting or using a reasonable accommodation to the known limitations" related to the employee's pregnancy. 42 U.S.C. § 2000gg-1. And the PWFA defines a "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions *that the employee or employee's representative has communicated to the employer*[.]" 42 U.S.C. § 2000gg(4) (emphasis added). Thus, to prevail on any of her PWFA claims, Ms. Etkins must show that she communicated her need for pregnancy-related accommodations to Dive North Hills. *See Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *3 (E.D. Wis. Dec. 16, 2024) ("Employers only face liability under the PWFA for failure to accommodate their employee's *known* limitations."). But, for the reasons just explained, the record lacks evidence which would allow a reasonable juror to conclude that Ms. Etkins requested pregnancy-related accommodations. The Court will therefore grant Dive North Hills' Motion with respect to Ms. Etkins' PWFA claims (Counts III, IV, V).

14

**IV.    Conclusion**

For the foregoing reasons, the Court will deny Dive North Hills' Motion with respect to Ms. Etkins' discrimination claims under Title VII and the PHRA but will grant the Motion with respect to Ms. Etkins retaliation claims under Title VII and the PHRA, and with respect to Ms. Etkins' PWFA claims.

DATED this 28th day of May, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

15